IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Criminal Action No. |
| v. | : | 2:16-CR-009-RWS-JCF |
| | : | |
| HORACE MAYFIELD, THURSTON | : | |
| CHADWICK MARTIN, and AVERO | : | |
| LACONDO HOWARD, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Criminal Action No. |
| v. | : | 2:16-CR-0010-RWS-JCF |
| | : | |
| HORACE MAYFIELD, AUDREONA | : | |
| NYREE SCOTT, CARLOS SANCHEZ, | : | |
| and THURSTON CHADWICK MARTIN, | : | |
| | : | |
| Defendants. | : | |

## **ORDER and NON-FINAL REPORT AND RECOMMENDATION**

These cases are before the Court on the following motions filed in Criminal

Action No. 2:16-CR-9: Defendant Mayfield's Preliminary Motion To Sever Parties

(Doc. 115); Defendant Howard's Motion For Severance From Other Defendants

(Doc. 151); Defendant Mayfield's Motion For Timely Disclosure And Access To

Confidential Informants (Doc. 117); and Motions To Reveal The Deal And

Information About Government Informants And Witnesses filed by Defendants

1

Mayfield, Martin, and Howard (Docs. 120, 158, 161).  The Court also has before it the following motions filed in Criminal Action No. 2:16-CR-10: Defendant Sanchez's Motion To Sever Defendant (Doc. 83); Defendant Scott's Motion to Sever (Doc. 86); Defendant Mayfield's Preliminary Motion To Sever Parties (Doc. 95); Motions For Timely Disclosure And Access To Confidential Informants filed by Defendants Mayfield and Sanchez (Docs. 97, 125); and Motions To Reveal The Deal And Information About Government Informants And Witnesses filed by Defendants Mayfield, Sanchez, and Martin (Docs. 99, 124).[1]

## Discussion

### I.    Motions To Sever

Defendants Mayfield, Howard, Sanchez, and Scott move to sever their respective cases from their co-defendants pursuant to FED. R. CRIM. P. 14.  (Docs. 115, 151 in 2:16-CR-9; Docs. 83, 86, 95 in 2:16-CR-10).

---

[1]  The 16-count Indictment filed in 2:16-CR-9 charges Defendants Horace Mayfield, Nathan Antonio Howard, Stephens Edwin Ivester, Quincey Jones, Leonardo Steeples, Thurston Chadwick Martin, Kevin Lesanne Stowers, Malissa Denice Holden, Marvin Junior Teasley, Joy Yvette Hunter, and Avero Lacondo Howard with several drug-related offenses, including conspiracy.  (Doc. 1, 2:16-CR-9).  The 12-count Indictment filed in 2:16-CR-10 similarly charges Defendants Mayfield, Ivester, Audreona Nyree Scott, Gustavo Melendez, Carlos Sanchez, Wilfredo Otero, Martin, and Mario Demitric Stowers with drug-related offenses, including conspiracy.  (Doc. 1, 2:16-CR-10).

### A.     Applicable Standards

Rule 8(a) provides as follows:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

FED. R. CRIM. P. 8(a).  Rule 8(b) provides:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

FED. R. CRIM. P. 8(b).  Defendants do not contend that joinder is improper under Rule 8.  Even where joinder is proper, however, Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  When joinder is proper under Rule 8, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  A court addressing a motion for severance under Rule 14 is to "balance the rights of the defendants and the government to a trial that is free from the prejudice that may result from joint trials against the public's interest in efficient

3

and economic administration of justice." *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001) (quoting *United States v. Pepe*, 747 F.2d 632, 649 (11th Cir. 1984)).

The Eleventh Circuit has noted that "[i]nherent in every joint trial is, of necessity, some degree of bias." *United States v. Lippner*, 676 F.2d 456, 464 (11th Cir. 1982) (quotation omitted). The court explained in *Lippner* that "a severance under Rule 14 is discretionary with the trial judge," and "[o]nly in the event such prejudice appears to be compelling does severance become warranted." *Id.* at 464 (quotation omitted). The test for "compelling prejudice" involves assessing

> [w]hether under all circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

*Id.* (quotation omitted). "The burden is on the defendant to demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense." *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997) (quotation omitted). "This is a heavy burden, and one which mere conclusory allegations cannot carry." *United States v. Walser*, 3 F.3d 380, 386 (11th Cir. 1993) (quotation omitted). Furthermore, "if the possible prejudice may be cured by a cautionary instruction[,] severance is not required." *Id*. at 387.

**B.**    **2:16-CR-9 (Docs. 115, 151)**

Defendant Mayfield contends that his case should be severed from his co-defendants because "the jury may have insurmountable difficulty in distinguishing" the acts alleged against Mayfield from the acts alleged against his other co-defendants, and he posits that evidence against co-defendants that is inadmissible against himself, including hearsay evidence, may still have 'prejudicial effect and . . . spillover risk' that justifies granting Mayfield a separate trial." (Doc. 115 at 3-4). Defendant Howard argues that trying him along with the other 10 co-defendants "is purely prejudicial" because he "is charged with only 2 counts related to the alleged possession of a firearm,"[2] and "the actual evidence in substantive part of the case related to the other defendants had nothing to do with this specific handgun that the Government alleges." (Doc. 151 at 1-2). Howard also contends that the Government "cannot even establish a nexus with the gun, [Howard], and the other Defendants and charges." (*Id.* at 2).

The undersigned finds that Defendants have not shown specific prejudice resulting from a joint trial, nor have they shown a "serious risk that a joint trial

---

[2] Count Thirteen charges Howard, along with Defendants Mayfield and Steeples, with conspiracy to violate 18 U.S.C. § 924(c), i.e., "during and in relation to a drug trafficking crime, that is, the offense of possession with intent to distribute a mixture and substance containing a detectable amount of cocaine, did use and carry a firearm, and in if furtherance of said drug trafficking crime did possess a firearm[.]" (Doc. 1). Count Fourteen charges Howard with possession of a firearm "that had the manufacturer's serial number removed, obliterated, and altered" in violation of 18 U.S.C. § 922(k). (*Id.*).

would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. To the extent that Defendants are concerned about the jury's ability to distinguish between the evidence against each Defendant and that against his co-defendants, "[a] disparity in the evidence admissible against one defendant as compared to his co-defendant is not a sufficient basis for a severance." *United States v. Goduto*, No. 1:11-CR-230-JEC-GGB, 2011 U.S. Dist. LEXIS 152750, at *6-7 (N.D. Ga. Nov. 29, 2011), *adopted by* 2012 U.S. Dist. LEXIS 12723 (N.D. Ga. Feb. 2, 2012). Critically, as the Government points out, Defendants have not provided this Court with a basis for concluding that the jury will not be able to follow the Court's instructions, including those governing the jury's consideration of evidence as to each defendant. *See Zafiro*, 506 U.S. at 541; *Goduto*, 2011 U.S. Dist. LEXIS 152750, at *6-7. Many jury instructions are designed to mitigate the potential prejudicial effect of jointly trying defendants. For example, the Eleventh Circuit Pattern Jury Instructions for Criminal Cases include instructions on requiring the jury to consider each charge against each defendant separately, and directing the jury that a conclusion that one defendant's guilt should not affect the jury's verdict as to other defendants. *See, e.g.*, *United States v. Lisbon*, 835 F. Supp. 2d 1329, 1371 (N.D. Ga. 2011) (considering pattern jury instructions in concluding severance was not warranted). If needed, the trial court has the authority to craft additional limiting instructions.

Mayfield also contends that the Government "may seek to elicit evidence of statements made by the co-defendants which are damaging to [him]," but if the co-defendant is unavailable for cross-examination, Mayfield's Sixth Amendment right to cross-examination would be violated as set forth in *Bruton v. United States*, 391 U.S. 123 (1968).[3]  (Doc. 115 at 4).  Defendant Howard similarly asserts that "[a] defendant may be prejudiced by the admission in evidence against a co-defendant or a statement or confession made by that co-defendant," which prejudice "cannot be dispelled by cross-examination if the co-defendant does not take the stand." (Doc. 151 at 2).  The Government responds that "at this stage of the proceeding, the Government does not intend to introduce a co-defendant's unredacted statement that would incriminate Mayfield [or Howard]."  (Doc. 329 at 4, 7).  The Government further asserts that if it seeks to introduce such a statement, "the statement would be redacted to delete any incriminating reference to Mayfield [or Howard], such that the statement would not, when considered in light of the Government's entire case, infer Mayfield's [or Howard's] guilt . . . .  Otherwise, the Government would choose not to use the statement rather than create a Bruton problem that would require severance."  (*Id.*).  In light of the Government's representations, Defendants' motion to sever based on *Bruton* concerns should

---

[3] In *Bruton*, the Supreme Court "held that a defendant is deprived of his rights under the [Sixth Amendment's] Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant."  *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987).

therefore be denied without prejudice to their right to renew the motion in the event the Government seeks to introduce a statement that would implicate those concerns.

Finally, Mayfield contends he might call his co-defendants to testify on his behalf, or they might call him, but if they fail to take the stand or refuse to testify, they would be subject to an adverse inference and/or comments on their failure to testify, in violation of the Fifth and Sixth Amendments.   (*Id.* at 5-6).   The Government correctly points out, however, that "in order to obtain a severance based upon the need of a defendant to call a co-defendant as a witness, Mayfield must show (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the co-defendant would testify at a separate trial."   (Doc. 329 at 4-5 (citing *Novaton*, 271 F.3d at 989)).   Mayfield has not made those showings in his motion to sever.

Because Defendants Mayfield and Howard have not shown at this point that compelling prejudice will result from a joint trial with their co-defendants, it is **RECOMMENDED** that their motions to sever (Docs. 115, 151) be **DENIED without prejudice** to their right to renew their motions if circumstances at trial support severance.   If Defendants demonstrate compelling prejudice at trial, the trial court can order that the trials of the defendants be severed.   *See, e.g.*, *United States v. Kopituk*, 690 F.2d 1289, 1316 (11th Cir. 1982) (noting that the trial court

has a "continuing duty at all stages of the trial to grant a severance if prejudice does appear" (internal quotation omitted)); *United States v. Hughes*, No. 2:08-CR-0019-RWS-SSC, 2008 U.S. Dist. LEXIS 109585, at *11 (N.D. Ga. Oct. 3, 2008) ("Should it become apparent at a later point in the prosecution of this case that prejudice to Defendant from trial of all [defendants] together is 'clearly beyond the curative power of a cautionary instruction,' Defendant may renew his motion."), *adopted by* 2009 U.S. Dist. LEXIS 69023 (N.D. Ga. Aug. 4, 2009).

### B.   <u>2:16-CR-10 (Docs. 83, 86, 95)</u>

Defendant Mayfield makes the same arguments in support of severance as he made in the other case, discussed above. (Doc. 95). For the same reasons already discussed, Mayfield has not shown that he should not be tried jointly with his co-defendants. Defendants Sanchez and Scott contend that they may be prejudiced by a joint trial by the presentation of antagonistic defenses by their co-defendants as well as by the "spillover effect," i.e., jurors may impute guilt to Defendants based on evidence of guilt admitted against a co-defendant, and they also argue that severance may be required to avoid a *Bruton* problem. (*See generally* Docs. 83, 86). Sanchez's and Scott's contentions are also insufficient to demonstrate compelling prejudice warranting severance at this point.

In *Zafiro* the defendants moved to sever their trials on the ground that their defenses were mutually antagonistic, but the district court denied their motions, and the Seventh Circuit affirmed, "[n]oting that 'mutual antagonism . . . and other .

9

. . . characterizations of the effort of one defendant to shift the blame from himself to a codefendant neither control nor illuminate the question of severance[.]' " 506 U.S. at 536-37 (quoting *United States v. Zafiro*, 945 F.2d 881, 886 (7th Cir. 1991)). In affirming that judgment, the Supreme Court observed that "the Courts of Appeals have expressed the view that 'mutually antagonistic' or 'irreconcilable' defenses may be so prejudicial in some circumstances as to mandate severance," but "the courts have reversed relatively few convictions for failure to grant a severance on the grounds of mutually antagonistic or irreconcilable defenses" thus possibly indicating "the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses." *Id.* at 538 (collecting cases). The Court declined to adopt the defendants' proposed "bright-line rule, mandating severance whenever codefendants have conflicting defenses" because "[m]utually antagonistic defenses are not prejudicial *per se*. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39.

The Court considered the defendants' "theory . . . that when two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt." *Id.* at 540. The Court countered the first contention by noting that "[i]t is well settled that

defendants are not entitled to severance merely because they have a better chance of acquittal in separate trials." *Id.* As to the second contention, the Court found that "petitioners' scenario simply did not occur" in that case because "[t]he Government argued that all four petitioners were guilty and offered sufficient evidence as to all four petitioners." *Id.* The Court also noted that the district court had "properly instructed the jury that the Government had 'the burden of proving beyond a reasonable doubt' that each defendant committed the crimes with which he or she was charged" and that the jury "must 'give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or to her.' " *Id.* at 541. Those instructions and others given by the trial court "sufficed to cure any possibility of prejudice." *Id.*

In this case, Defendants have not shown specific prejudice from a joint trial based on their conclusory assertions that "there exists a probability that antagonistic defenses will be raised by [co-defendants]" (Doc. 83 at 2) and "Defendant's co-defendants may raise defenses that are antagonistic to [his or hers]." (Doc. 86 at 1). Nor have they shown that that the jury will not be able to follow the Court's instructions, including those governing the jury's consideration of evidence as to each defendant. *See Zafiro*, 506 U.S. at 541. As to the potential *Bruton* problem if co-defendants' statements are admitted at trial, the Government

11

again asserts that "the Government does not intend to introduce a co-defendant's unredacted statement that would incriminate Mayfield, Scott, or Sanchez" and "if the Government were to seek to introduce such a redacted statement, the statement would be redacted to delete any incriminating reference to respective defendant, such that the statement would not, when considered in light of the Government's entire case, infer the defendant's guilt."   (Doc. 268 at 6-7).   Based on those representations, Defendants have not shown that severance is required.

Because Defendants Mayfield, Scott, and Sanchez have not shown at this point that compelling prejudice will result from a joint trial with their co-defendants, it is **RECOMMENDED** that their motions to sever (Docs. 83, 86, 95) be **DENIED without prejudice** to their right to renew their motions if circumstances at trial support severance.

## II.   Motions For Confidential Informant Information

### A.   2:16-CR-9 (Docs. 117, 120, 158, 161)

Defendant Mayfield moves the Court to order the Government "to fully disclose the identity of each confidential informant ('CI') who is also a material witness[] and/or participant in the offenses charged against [them] in these indictments" and "to compel the Government to provide timely access to these witnesses."   (*See* Doc. 117 at 1).   Specifically, Mayfield requests that the Court enter an order compelling the Government to disclose the identity of "CI 88-868," "CI 88-896," and "CRS #1" at least 45 days prior to trial "and that each CI should

be made available for questioning at least 30 days prior to trial." (*Id.* at 2-3, 9-10).

Defendants Mayfield, Martin, and Howard also move the Court to order the Government to provide "prompt disclosure of any information regarding the Government's formal or informal agreements with any CI; the CI's possible expectation or understanding as to receiving benefits; the benefits actually provided to the CI; and any other agreement or understanding that could conceivable influence the conduct or testimony of the CI in this case." (*See* Doc. 120 at 1). They also request that the Government "fully identify each CI and his relationships with the defendants and the Government in this case" and provide "information as to each CI's date of birth, social security number, criminal history, the identify of any person or business used by the CI to conduct business with or contact any defendant in this case, and the nature of any such business." (*Id.* at 4). Defendants also seek:

- a) All files relating to the CI from any federal and/or state agency;
- b) Any criminal record;
- c) Psychological/psychiatric history;
- d) Any deceptive or inconclusive polygraph result;
- e) Any reports or other documentation reflecting any deals or arrangements between the Government and the CI concerning the CI's cooperation during the investigation and trial of this case;
- f) Any payment records, documents and/or other materials relating to benefits or potential benefits received by or offered to the CI; and
- g) Federal income tax records verifying any compensation the CI received from the Government.

(*Id.* at 6).   Defendants explain that their motions "specifically encompass[] and include[] each of the three (3) CIs referenced" in Mayfield's motion to identify "CI 88-868," "CI 88-896," and "CRS #1" (*see* Doc. 117).  (Doc. 120 at 2).

In response, the Government represents that CI 88-868 and CI 88-896 were not involved in the transactions described in the indictments and therefore "neither informant will be a witness for the Government at defendant[s'] trial[s]."  (Doc. 328 at 3-4).  The Government also asserts that "CRS #1" is not a person but "is actually a reference to information obtained from monitoring defendant's telephone calls," and therefore is not a confidential informant about whom the Government can provide the requested information.  (Doc. 328 at 2-3).  Defendants did not reply to the Government's response and have not countered its assertion that the confidential informants did not participate in the transactions charged in the indictment and will not be witnesses for the Government at trial or that CRS #1 is not a person.  Nor have Defendants provided another basis for requiring the Government to provide the requested information about the confidential informants.  Accordingly, Defendant Mayfield's Motion For Timely Disclosure And Access To Confidential Informants (Doc. 117) and Defendant Mayfield, Martin, and Howard's Motion To Reveal The Deal And Information About Government Informants And Witnesses (Docs. 120, 158, 161) are **DENIED**.[4]

---

[4] Nothing in this Order alters the Government's obligation to comply with *Giglio* and the Jencks Act with respect to testifying witnesses.

### B.   2:16-CR-10 (Docs. 97, 99, 124, 125)

Defendants Mayfield, Sanchez, and Martin make the same requests as made in 2:16-CR-9 concerning the disclosure of identities and other information about CI 88-868, CI 88-896, and CRS #1 (*see* Docs. 97, 99, 124, 125), and the Government offers the same response (*see* Doc. 267).   For the same reasons discussed above, Defendants' Motion For Timely Disclosure And Access To Confidential Informants (Docs. 97, 125) and Motion To Reveal The Deal And Information About Government Informants And Witnesses (Doc. 99, 124) are **DENIED**.

### Summary

In Criminal Action No. 2:16-CR-9 it is **ORDERED** that Defendant Mayfield's Motion For Timely Disclosure And Access To Confidential Informants (Doc. 117) and the Motions To Reveal The Deal And Information About Government Informants And Witnesses filed by Defendants Mayfield, Martin, and Howard (Docs. 120, 158, 161) are **DENIED**.   It is **RECOMMENDED** that Defendant Mayfield's Preliminary Motion To Sever Parties (Doc. 115) and Defendant Howard's Motion For Severance From Other Defendants (Doc. 151) be **DENIED without prejudice**.

In Criminal Action No. 2:16-CR-10, it is **ORDERED** that the Motions For Timely Disclosure And Access To Confidential Informants filed by Defendants Mayfield and Sanchez (Docs. 97, 125) and the Motions To Reveal The Deal And

15

Information About Government Informants And Witnesses filed by Defendants Mayfield, Sanchez, and Martin (Docs. 99, 124) be **DENIED**. It is **RECOMMENDED** that Defendant Sanchez's Motion To Sever Defendant (Doc. 83), Defendant Scott's Motion to Sever (Doc. 86), and Defendant Mayfield's Preliminary Motion To Sever Parties (Doc. 95) be **DENIED without prejudice**.

**IT IS SO ORDERED, REPORTED AND RECOMMENDED** this 28th day of March, 2018.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge